UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MARVIN ANDERSON,

     Plaintiff,

 - against -

THE CITY OF NEW YORK, POLICE OFFICER JAMES
PETRONELLA, # 19977, and POLICE OFFICER
WILLIAM LARKIN, # 15817, POLICE OFFICER
JOHN DOE # 3,

     Defendants.
----------------------------------------X

**MEMORANDUM & ORDER**

06-CV-5363 (KAM)(VVP)

**MATSUMOTO,** UNITED STATES DISTRICT JUDGE**:**

        Plaintiff Marvin Anderson ("plaintiff" or "Anderson")
brought this action against the City of New York ("the City")
and New York City Police Officers James Petronella ("Officer
Petronella"), William Larkin ("Larkin"), and John Doe #3 in
their individual capacities, alleging federal civil rights
claims pursuant to 42 U.S.C. §§ 1981, 1983, and 1985, and
various state law tort claims, all arising out of plaintiff's
allegedly false arrest, malicious prosecution, and strip search.

        Defendants now move for summary judgment on each of
plaintiff's claims pursuant to Federal Rule of Civil Procedure
56. (*See* ECF No. 47, Notice of Motion for Summary Judgment,
dated July 30, 2010; ECF No. 48, Defendants' Memorandum of Law
in Support of Motion for Summary Judgment ("Defs.' Mem."), dated
July 30, 2010.) For the reasons set forth below, defendants'
motion is denied in part and granted in part.

**BACKGROUND**

**I. Parties**

Plaintiff Anderson is a resident of Bronx County. (ECF No. 18, Amended Complaint ("Am. Compl.") ¶ 4, dated Mar. 12, 2009.)  Defendants Officer Petronella and Officer Larkin are police officers employed by the New York City Police Department, a branch of defendant City of New York.  (*Id.* ¶ 6.)  At the time of the events alleged in the Amended Complaint, Officers Petronella and Larkin worked at the 112th Precinct.  (ECF No. 51-4, Larkin Affidavit ("Larkin Aff.") ¶ 1; ECF No. 51-5, Petronella Affidavit ("Petronella Aff.") ¶ 1.)  Defendant City of New York is a municipal corporation incorporated under the laws of the State of New York.  (Am. Compl. ¶ 5.)

**II. Facts**

The following facts are set forth based upon the parties' Local Civil Rule 56.1 statements and supporting materials, and are undisputed except as noted below.  They do not constitute findings of fact by the court.  The court has considered whether the parties have come forth with admissible evidence in support of their positions and has viewed the facts in a light most favorable to the non-moving plaintiff.

The parties do not dispute that on October 14, 2005, plaintiff was arrested at Parkway Hospital in Queens, New York, following an altercation between plaintiff and hospital security

2

guard, Alex Liriano.  (ECF No. 49, Defendants' Local Civil Rule
56.1 Statement ("Defs.' 56.1 Stmt.") ¶¶ 1-2.)  The same day, a
verified criminal court complaint was filed against plaintiff
charging him with assault in the third degree, a misdemeanor,[1]
and harassment in the second degree, a violation,[2] under New York
Penal Law.  (*Id.* ¶ 5.)

The events surrounding the arrest, however, are
disputed by the parties.  Plaintiff alleges that on October 14,
2005, he was sent by his union to Parkway Hospital for medical
treatment.  (ECF No. 52-2, Affidavit of Marvin Anderson in
Opposition to Defendants' Motion for Summary Judgment ("Anderson
Aff.") ¶ 3.)  At the hospital, plaintiff was directed to provide
a urine sample.  (*Id.* ¶ 4.)  After doing so, plaintiff waited
"for a considerable amount of time" for hospital staff to issue
further instructions but no one attended to him.  (*Id.*)
Plaintiff eventually asked medical staff where to drop the urine
sample, and was "spoken to very harshly and told to sit down

---

[1] Under New York Penal Law § 120.00, a person is guilty of assault in the
third degree when "[w]ith intent to cause physical injury to another person,
he causes such injury to such person or to a third person" or "[h]e
recklessly causes physical injury to another person."  N.Y.P.L. § 120.00.
Assault in the third degree is a class A misdemeanor.  *Id.*

[2] New York Penal Law § 240.26 provides that "[a] person is guilty of
harassment  in the second degree when, with intent to harass, annoy or alarm
another person: [1] He or she strikes, shoves, kicks or otherwise subjects
such other person to physical contact, or attempts or threatens to do the
same; or [2] He or she follows a person in or about a public place or places;
or [3] He or she engages in a course of conduct or repeatedly commits acts
which alarm or seriously annoy such other person and which serve no
legitimate purpose." N.Y.P.L. § 240.26.

until [he] was called." (*Id.*)  Plaintiff expressed to hospital staff his view that he had not been attended to promptly because he is a young black man, and that he was being treated differently and being spoken to harshly because of his race. (*Id.* ¶ 5.)  Plaintiff also expressed his desire to leave the hospital and go to another one for medical treatment because he did not like the treatment he received and how he was spoken to. (*Id.*)  At this time, the hospital staff called security and two security guards arrived upstairs.  (*Id.*)

Plaintiff went downstairs to the lobby where he exchanged words with the security guards in the lobby area, which is monitored by a camera.  (*Id.* ¶ 6.)  Plaintiff alleges that the security guards berated him and then one security guard hit him in the face, injuring plaintiff such that one of his eyes was almost swollen shut.  (*Id.* ¶ 6.)  Plaintiff then asked that the police be called, and two "White Police Officers" arrived at the scene.  (*Id.* ¶ 7.)  The officers arrived at the hospital in response to a call, after the altercation between the Anderson and Liriano, the security guard who hit him. (Defs.' 56.1 Stmt. ¶ 2; Larkin Aff. ¶¶ 3-5; Petronella Aff. ¶¶ 3-4.)

## A. Plaintiff's Version of Events

Plaintiff claims that when Officers Petronella and Larkin arrived at the hospital, his eye was swollen shut and he

explained to them that he was injured from being punched by Liriano. (Anderson Aff. ¶ 7.) Plaintiff told the officers that a review of the hospital camera's tape would show that Liriano assaulted him, and that he did not provoke or punch the security guard. (*Id.* ¶ 8.) Plaintiff also stated to the officers that he wanted "the White Security Guard" arrested for assaulting him. (*Id.*)

Plaintiff attests that at this point, the officers whispered to each other and then told plaintiff that he would be better off leaving the scene. (*Id.*) Plaintiff responded that he did nothing wrong and wanted Liriano arrested, and said again that the incident had been recorded by the hospital camera. (*Id.* ¶ 9.) Officers Petronella and Larkin told plaintiff that they might arrest plaintiff along with Liriano. (*Id.*) Plaintiff stated that he did not care if he was also arrested, and repeated that he wanted the police to arrest Liriano and that the assault was caught on camera. (*Id.*) The officers then told plaintiff to leave or he would be arrested. (*Id.* ¶ 10.) After plaintiff again stated that he, not Liriano, had been assaulted and that he wanted Liriano arrested, the officers arrested plaintiff. (*Id.*)

According to plaintiff, the officers never spoke with Liriano prior to arresting plaintiff. (*Id.* ¶ 12.) Plaintiff states that he was standing in close proximity to Liriano and

5

the officers when the officers arrived, and that Liriano did not once tell them that he had been assaulted by plaintiff. (*Id.*) Plaintiff also claims that the officers saw his injuries and did not see any injuries on Liriano. (*Id.* ¶ 13.)

Plaintiff further attests that he was strip searched at the police station and at Rikers Island but does not provide details regarding the circumstances or the officers who conducted the alleged strip searches. (*Id.* ¶ 15.)

### B. Defendants' Version of Events

Officer Petronella attests that he, accompanied by his sergeant and partner, Officer Larkin, "responded to a 911 call from Parkway Hospital regarding a disorderly person hitting people outside of the Emergency Room." (Petronella Aff. ¶ 3; *see also* Larkin Aff. ¶ 3.) According to the defendant officers, Liriano complained to them that plaintiff had hit him in the face. (Defs.' 56.1 Stmt. ¶ 3.) Both officers observed that Liriano's lip was bleeding and that he appeared bruised. (*Id.* ¶ 4; Larkin Aff. ¶ 4; Petronella Aff. ¶ 4.) Liriano told Officer Petronella that plaintiff had punched and shoved him when plaintiff was asked to leave the hospital for causing a disturbance. (Petronella Aff. ¶ 4.) Officer Petronella observed that plaintiff was in an "agitated state" and that plaintiff did not appear to be injured. (*Id.* ¶ 5.)

6

According to Officer Petronella, he then placed plaintiff under arrest and waited for Officer Larkin, his sergeant, to verify the arrest before transporting plaintiff back to the 112th Precinct. (*Id.* ¶ 6.)  Officer Larkin swears that he did not authorize the arrest and had no personal involvement in the events, aside from driving his partner, Officer Petronella, to and from the hospital.  (Larkin Aff. ¶¶ 5-10.)

Once back at the precinct, Officer Petronella conducted a pat-down search of the plaintiff in front of the precinct's front desk, vouchered his property, and placed him in a holding cell to wait while Officer Petronella completed the arrest paperwork.  (Petronella Aff. ¶ 7.)  According to Petronella, at no time did he authorize or observe anyone strip search plaintiff at the precinct.  (*Id.* ¶¶ 8-9.)

### C. Post-Arrest Undisputed Facts

On November 26, 2005, plaintiff filed a notice of claim against the City alleging that he was "violated and discriminated at 70-35 Parkway Hospital.  I was also arrested by a Sergeant and Police Officer James Petronella, from the 112 Pct."  (ECF No. 51-11, Notice of Claim Against a Public Authority ("Notice of Claim"), dated Nov. 26, 2005.)

On May 30, 2007, the Queens County Criminal Court issued an Order of Protection directing plaintiff to stay away

from and refrain from communicating with Liriano.  (Defs.' 56.1
Stmt. ¶ 6; ECF No. 51-8, Order of Protection, dated May 30,
2007.)  On June 22, 2007, plaintiff's criminal court case was
dismissed.  (Defs.' 56.1 Stmt. ¶ 8; ECF No. 51-10, Certificate
of Disposition ("Certificate of Disposition"), dated June 22,
2007.)  The parties disagree on whether plaintiff's lawyer took
an adjournment in contemplation of dismissal ("ACD") on his
behalf.  (Defs.' 56.1 Stmt. ¶ 9; ECF No. 52, Plaintiff's
Response to Defendants' Rule 56.1 Statement ("Pl.'s 56.1 Stmt.")
¶ 9, dated Dec. 9, 2010; ECF No. 53, Plaintiff's Memorandum of
Law ("Pl.'s Mem.") at 11, dated Dec. 10, 2010.)

**III. Plaintiff's Claims**

        Plaintiff alleges that the defendant officers, in
falsely arresting, maliciously prosecuting, and strip searching
him, violated his rights under the "First, Fourth, Fifth and
Fourteenth Amendments" of the Constitution pursuant to 42 U.S.C.
§§ 1981, 1983, and 1985.  (Am. Compl. ¶ 1.)  Plaintiff
additionally brings analogous state law tort claims against
defendant officers, as well as against defendant City of New
York under a theory of municipal liability.  (*Id.* ¶¶ 50-54.)

        Defendants presently seek dismissal of all claims
pursuant to Federal Rule of Civil Procedure 56.  The court will
address each claim *in seriatim*.

**DISCUSSION**

**I. Summary Judgment Standard**

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986.)  Under Federal Rule of Civil Procedure 56, the court may grant summary judgment only if, after taking into account all the pleadings, the discovery and disclosure materials on file, and any affidavits, the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" for these purposes "when it might affect the outcome of the suit under the governing law." *Jeffreys v. City of New York*, 426 F. 3d 549, 553 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Thus, the court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  When ruling on a summary judgment motion, the district court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the

9

movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775

780 (2d Cir. 2003).

The moving party carries the initial burden under Rule

56 of demonstrating an absence of evidence to support the

nonmoving party's case. *Celotex*, 477 U.S. at 325. The

nonmoving party then "must come forward with specific facts

showing that there is a *genuine issue for trial.*" *Caldarola v.

Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita

Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

(1986)) (internal quotation marks omitted). To defeat a summary

judgment motion, there must be "sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party."

*Anderson*, 477 U.S. at 249. If the nonmoving party's evidence is

"merely colorable, or is not significantly probative, summary

judgment may be granted." *Anderson*, 477 U.S. at 249 (internal

citations omitted).

## II. Section 1983 Claims

Section 1983 provides in relevant part:

Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any
State . . . subjects, or causes to be subjected,
any citizen of the United States . . . to the
deprivation of any rights, privileges, or
immunities secured by the Constitution and laws,
shall be liable to the party injured in an action
at law . . . .

10

42 U.S.C. § 1983.  To prevail on a Section 1983 claim, the plaintiff must "establish that a person acting under color of state law deprived him of a federal right." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *see* 42 U.S.C. § 1983.  When there are material facts in dispute at the summary judgment stage, summary judgment should not be granted.  *See Curry v. City of Syracuse*, 316 F.3d 324, 329 (2d Cir. 2003) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.") (internal quotation marks and citation omitted).

## A. Section 1983 False Arrest Claim

Plaintiff alleges pursuant to Section 1983 that he was arrested without probable cause in violation of his rights under the Fourth and Fourteenth Amendments.  (Am. Compl. ¶ 39.) Defendants argue that summary judgment on this issue is appropriate because there was probable cause to arrest plaintiff, and in the alternative, because plaintiff consented to his arrest.  (Defs.' Mem. at 1; ECF No. 56, Defendants' Reply Memorandum of Law in Further Support of Motion for Summary Judgment ("Defs.' Reply Mem.") at 3, dated Jan. 28, 2011.)

Here, the court cannot determine whether probable cause existed as a matter of law because genuine issues of material fact exist as to the relevant events.  Accordingly,

defendants' motion for summary judgment on plaintiff's false arrest claim is denied.

A Section 1983 claim for false arrest sounding in the Fourth Amendment is "substantially the same" as a claim for false arrest under New York law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Under New York law, the torts of false arrest and false imprisonment are "synonymous," *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991), and "the elements of a false imprisonment claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal citation and quotation marks omitted).

Probable cause serves as a "complete defense to an action for false arrest." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Generally, probable cause to arrest exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Weyant*, 101 F.3d at 852. The court, in evaluating the existence of probable cause, must look to the "totality of the circumstances,"

12

*Caldarola*, 298 F.3d at 162, and consider the "facts available to the officer at the time of arrest." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (internal citations omitted).  The "quantum of evidence required to establish probable cause . . . must constitute more than rumor, suspicion, or even a strong reason to suspect." *United States v. Fisher*, 702 F.2d 372, 376 (2d Cir. 1983) (internal citation and quotation marks omitted).  The court may determine as a matter of law whether or not probable cause existed "if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant*, 101 F.3d at 852 (internal citations omitted).  However, the existence of probable cause "may require a trial *if the facts are in dispute*."  *Id.* (emphasis added).

Here, defendants argue that Officers Petronella and Larkin had probable cause to arrest plaintiff based on Liriano's complaint of being assaulted by plaintiff, and the officers' alleged observations of Liriano's injured lip.  (Defs.' Mem. at 7.)  Defendants' argument must fail, however, because there exists a serious factual dispute regarding what transpired at the hospital when defendant officers arrived on the scene.

Plaintiff states, based on his observations, that Liriano never spoke to the officers and that he, the plaintiff, was in fact the visibly injured party, and that the officers could see plaintiff's injuries.  (Anderson Aff. ¶¶ 9-13.)

Defendants claim that Liriano spoke to Officer Petronella, and Officer Petronella states that Liriano was visibly injured and plaintiff was unharmed.  (Larkin Aff. ¶ 4; Petronella Aff. ¶¶ 4-5.)  In their affidavits, neither officer mentions speaking with plaintiff prior to arresting him.  (*See* Larkin Aff.; Petronella Aff.)  Under defendants' version of events, probable cause to arrest existed; under plaintiff's version, there was no probable cause.  Viewing the facts in the light most favorable to the plaintiff, as the court must in deciding a summary judgment motion, the court finds that there is a genuine issue of material fact as to whether defendants lacked probable cause to arrest plaintiff.  Accordingly, defendants' summary judgment motion on the Section 1983 false arrest claim is denied.  *See, e.g.*, *Curry*, 316 F.3d at 337 (denying summary judgment where plaintiff's deposition contradicted defendant officer's testimony).

Defendants cite to several cases in arguing that the police have no duty to investigate conflicting accounts of different witnesses and are entitled to believe one side over the other.  (Defs.' Mem. at 6-7.)  Their argument is beside the point.  Here, the issue is not whether Officers Petronella and Larkin credited Liriano's report of events over plaintiff's; rather, the issue is whether the officers spoke with Liriano *at all* prior to arresting plaintiff.

Additionally, the court bears in mind that the credibility of witnesses is not to be assessed by the court on a motion for summary judgment.  The court's responsibility is "only to determine whether there are issues [of fact] to be tried . . . . Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994); *see also Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) ("Where the question of whether an arresting officer had probable cause is predominantly factual in nature . . . the existence *vel non* of probable cause is to be decided by the jury.").

Defendants also argue, in the alternative, that even if probable cause did not exist for plaintiff's arrest, plaintiff consented to his arrest by telling the officers that he did not care if he was arrested.  (Defs.' Reply Mem. at 3.) Defendants cite no law to support their argument.  After conducting its own research into the issue of verbal consent to arrest, the court cannot rule as a matter of law whether plaintiff actually consented to his arrest.  The question is properly one for the jury.

The facts at hand are similar to the facts in *Feldman v. Town of Bethel*, 484 N.Y.S.2d 147 (N.Y. Sup. Ct. 1984). There, the plaintiff, who was tape recording a town council

15

meeting, was directed to stop by the town supervisor. *Id.* at
149.   When an officer was directed to stop the plaintiff and
the plaintiff told the officer, "You have to arrest me," he was
subsequently arrested. *Id.* (internal quotation marks omitted).
Under the plaintiff's alleged facts, he did not voluntarily
submit to the arrest; rather, he intended to exercise his rights
to stay and tape record the meeting. *Id.* at 150.  The court in
*Feldman* held that "[i]t was within the province of the jury to
decide whether plaintiff voluntarily accompanied the town
constable" or whether he was arrested without consent, and
therefore, dismissal of the plaintiff's false imprisonment claim
was inappropriate. *Id.*

Here, as in *Feldman*, plaintiff disputes that his
statements to the defendant officers signified true consent to
arrest.  Indeed, according to plaintiff's Affidavit, plaintiff
stated in response to the officers that he wanted the security
guard to be arrested for assaulting him and that he "did not
care" if the officers also arrested him with the security guard.
(Anderson Aff. ¶ 9.)  Accordingly, dismissing plaintiff's false
arrest claim on the basis of consent at this stage is improper.
Defendants' motion for summary judgment on the claim of false
arrest under Section 1983 is denied.

**B. Qualified Immunity**

16

Defendants also argue that Officers Petronella and Larkin should be immune from a claim of false arrest, even absent probable cause, under the doctrine of qualified immunity. (Defs.' Mem. at 11-12.)

Qualified immunity "shields government officials from liability for civil damages as a result of their performance of discretionary functions" and acts to protect officials "from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). Qualified immunity can be established through "arguable probable cause," which exists if "(1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause for arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Thus, "even if an officer is mistaken, and the arrestee did not commit the crime, the officer will not be held liable if he acted reasonably and in good faith." *Washpon v. Parr*, 561 F. Supp. 2d 394, 403 (S.D.N.Y. 2008) (citing *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). The test for qualified immunity is "more favorable to officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity" for an arrest. *Escalera*, 361 F.3d at 743.

The inquiry of whether the shield of qualified immunity applies to a defendant's conduct is a mixed question of law and fact. *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004). Where there is no material factual dispute, it is appropriate for the district court to assess the reasonableness of the defendants' conduct under the circumstances presented and to rule on qualified immunity at the summary judgment stage. *Lennon*, 66 F.3d at 421. Where, as here, however, there *is* a dispute regarding the material facts, "the factual questions must be resolved by the factfinder." *Kerman*, 374 F.3d at 109; *see also Oliviera v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) (holding that qualified immunity should be decided by the court "only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required"). Thus, defendants are precluded from the defense of qualified immunity at the summary judgment stage.

## C. Section 1983 Malicious Prosecution Claim

Plaintiff alleges that defendants maliciously prosecuted him in violation of his Fourth Amendment rights. (Am. Compl. ¶ 41.) Defendants contend that plaintiff cannot establish the requisite elements of an action for malicious prosecution. (Defs.' Mem. at 8-11.)

A malicious prosecution action implicates the constitutional right "to be free of unreasonable seizure of the

18

person." *Singer*, 63 F.3d at 116.  To succeed on a Section 1983 claim of malicious prosecution, the plaintiff "must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Id.* at 117.  The elements of a malicious prosecution claim brought under Section 1983 are substantially the same as in malicious prosecution claims brought under New York law. *Conway v. Village of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984).  Under New York law, "[t]o prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti*, 124 F.3d at 130.  Defendants dispute the existence of each element.

Under the first element, initiation of prosecution, there is a general presumption that a prosecutor exercises independent judgment in deciding whether to initiate or continue a criminal proceeding. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999).  However, in "malicious prosecution cases against police officers, plaintiffs have met this first element by showing that officers brought formal charges and had the person arraigned." *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 382 (S.D.N.Y. 2005) (internal citations omitted); *see also Ricciuti*, 124 F.3d at 130 ("[A] jury could

clearly find that [the defendant police officer] started the
assault prosecution because no one disputes that he started the
prosecution by filing the charges of second-degree assault.");
*Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010)
("Under New York law, police officers can 'initiate' prosecution
by filing charges or other accusatory instruments.").

Here, Officer Petronella brought formal charges of
third-degree assault and second-degree harassment against
plaintiff in an accusatory instrument.  (ECF No. 51-6, Criminal
Complaint, dated Oct. 14, 2005.)  A reasonable juror could find,
as in *Ricciuti*, that Officer Petronella initiated the criminal
prosecution against plaintiff.  Accordingly, defendants have not
carried their burden in demonstrating that plaintiff cannot meet
the first element of a malicious prosecution claim.

The second element of a malicious prosecution claim is
whether defendants had probable cause to prosecute plaintiff.
Probable cause in a malicious prosecution claim is not the same
as probable cause to arrest in a false arrest claim.  *Posr v.
Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999).
Instead, in the context of malicious prosecution, "probable
cause is the 'knowledge of facts, actual or apparent, strong
enough to justify a reasonable man in the belief that he has
lawful grounds for prosecuting the defendant in the manner
complained of.'" *Genia v. N.Y. State Troopers*, No. 03-CV-0870,

2007 WL 869594, at *12 (E.D.N.Y. Mar. 20, 2007) (quoting
*Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994)). Here,
the question is therefore whether the defendant officers had
probable cause to charge plaintiff with third-degree assault.
Construing the facts in a light most favorable to plaintiff and
accepting for purposes of this motion plaintiff's version of the
facts, a reasonable jury would not find that the officers, upon
seeing plaintiff with an injury and not having spoken to
Liriano, had lawful grounds to prosecute plaintiff for third-
degree assault. Accordingly, disputed issues of fact exist as
to the second element of plaintiff's malicious prosecution
claim.

Under the third element of malice, New York courts
have held that malice "means only that the defendant must have
commenced the criminal proceeding due to a wrong or improper
motive, something other than a desire to see the ends of justice
served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d
Cir. 1996) (citations and internal quotation marks omitted).
Lack of probable cause to prosecute "generally raises an
inference of malice sufficient to withstand summary judgment."
*Ricciuti*, 124 F.3d at 131; *see also Genia*, 2007 WL 869594, at
*16 ("A jury may infer the existence of actual malice from the
absence of probable cause" to institute a criminal proceeding)
(internal citation omitted). In this case, given that a

21

reasonable person could find that defendant officers lacked probable cause to charge plaintiff, evidence of malice can be inferred.  Thus, plaintiff's malicious prosecution claim survives summary judgment on the third element.

The last and fourth element of a malicious prosecution claim requires a termination of criminal charges in plaintiff's favor.  This element "is designed principally to ensure against inconsistent judgments and to avoid parallel litigation as to questions of probable cause." *Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997) (internal citations omitted).  Where the criminal proceedings do not end in an acquittal, the element of favorable termination is satisfied "only when [the] final disposition is such as to indicate the innocence of the accused." *Id.*  An adjournment in contemplation of dismissal ("ACD") does not qualify as favorable terminations.  *Id.* at 949; *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980) (holding that an "adjournment in contemplation of dismissal, like a consent decree, involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt").

Here, the parties dispute whether plaintiff received an ACD.  Plaintiff admits in his Amended Complaint that his criminal charge was terminated in an adjournment in contemplation of dismissal, (Am. Compl. ¶ 25), but later contends that "[i]t was not an ACD as Defense Counsel

22

erroneously advised Plaintiff's Counsel and the Court during earlier proceedings." (Pl.'s Mem. at 11.)  Defendants submit a Record of Court Action, (ECF No. 51-9, Record of Court Action), and Certificate of Disposition, (ECF No. 51-10, Certificate of Disposition, dated June 12, 2009) in arguing that plaintiff received an ACD.  However, the Record of Court Action is nearly illegible and does not convince this court that plaintiff received an ACD.  The seal on the Certificate of Disposition, moreover, states that the criminal charge against plaintiff was "dismissed and sealed" on June 22, 2007 "pursuant to Section 160.50 of the CPL."[3]  (*Id.*)  Plaintiff points out, and defendants do not dispute, that a sealing of records pursuant to N.Y. C.P.L. § 160.50 occurs when a matter is dismissed, not when it ends in an ACD.  (Pl.'s Mem. at 12.)  A certificate of disposition that on its face belies defendants' argument and an illegible record of court action are not enough to satisfy the court that defendants have met their burden to show the absence of a genuine issue of material fact as to whether plaintiff received an ACD.  Accordingly, the court finds that plaintiff's malicious prosecution claim survives the fourth element.

---

[3]  New York Criminal Procedure Law § 160.50 defines an "Order upon termination of criminal action in favor of the accused."  In relevant part, Section 160.50 provides that upon "the termination of a criminal action or proceeding against a person in favor of such person . . . the record of such action or proceeding shall be sealed . . . ."  N.Y. C.P.L. § 160.50(1).

Viewing the facts in the light most favorable to plaintiff, defendants fail to show that plaintiff cannot meet each element of his malicious prosecution claim.  Thus, defendants' motion for summary judgment on plaintiff's Section 1983 malicious prosecution claim is denied.

### D. Section 1983 Strip Search Claim

Plaintiff claims that he was subjected to strip searches at the police station and at Rikers Island, despite there being no indication that he was involved in a drug transaction or hiding drugs or weapons on his person, and further alleges that the strip searches were conducted according to the City of New York's policy and practice.  (Anderson Aff. ¶ 15; Am. Compl. ¶ 22, 51-52.)  Defendants argue that summary judgment should be granted because plaintiff has failed to sustain his burden of demonstrating the personal involvement of each of the individually named defendants in the alleged strip searches.  (Defs.' Mem. at 14-16.)

Before a person can be lawfully subjected to a strip search, the "Fourth Amendment requires an individualized 'reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.'" *Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) (quoting *Weber v. Dell*, 804 F.2d 796, 802

(2d Cir. 1986)).  In addition, to bring an illegal strip search claim under Section 1983, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  Personal involvement can be shown by evidence that the defendant "participated directly in the alleged constitutional violation"; or that the defendant acted in a supervisory capacity by creating a policy or custom under which violations occurred, by negligently supervising subordinates, or by failing to act or remedy wrongs after being aware of them.  *Id.* at 873.

Here, any claim that Officers Petronella and Larkin strip searched plaintiff is unsupported by sufficient evidence to create a triable issue of fact.  Plaintiff fails to allege that the named defendant officers were involved in the alleged strip searches, either personally or in a supervisory capacity. (Anderson Aff. ¶ 15; Am. Compl. ¶ 21.)  *See, e.g.*, *Thompson v. City of New York*, 603 F. Supp. 2d 650, 659 (S.D.N.Y. 2009) (granting summary judgment for the defendants where plaintiff's amended complaint, taken as true, failed to support a claim that the named defendants caused plaintiff to be strip searched); *Travis v. Village of Dobbs Ferry*, 355 F. Supp. 2d 740, 753 (S.D.N.Y. 2005) (dismissing illegal strip search claim against

some officers under the "personal involvement" rule).  Moreover, plaintiff's allegation that defendant City is liable for the strip search because of an alleged policy and practice, (Am. Compl. ¶ 51), cannot survive summary judgment.  Plaintiff has not produced any facts supporting his claim that defendant City had a policy and practice to strip search misdemeanor arrestees. Accordingly, plaintiff's strip search claim pursuant to Section 1983, as well as his strip search cause of action against defendant City brought under a theory of respondeat superior, are dismissed.

### E. Equal Protection Claim

Plaintiff alleges that defendants, "[i]n arresting and/or prosecuting [him] because he is Black and in not arresting and/or prosecuting the White/White Hispanic Security Guard because of his race," violated his right to equal protection of the laws under the Constitution and 42 U.S.C. § 1981.  (Am. Compl. ¶ 45.)  Defendants argue that plaintiff's claim should be dismissed for failing to allege that plaintiff was treated differently than other similarly situated persons on the basis of his race.  (Defs.' Mem. at 14.)

To state a claim for an equal protection violation, plaintiffs "must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender." *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d

26

Cir. 1999).  Generally, there are several ways to plead
intentional discrimination in violation of equal protection.

> A plaintiff could point to a law or policy that
> expressly classifies persons on the basis of
> race.  Or, a plaintiff could identify a facially
> neutral law or policy that has been applied in an
> intentionally discriminatory manner.  A plaintiff
> could also allege that a facially neutral statute
> or policy has an adverse effect and that it was
> motivated by discriminatory animus.

*Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 1999)
(internal quotation marks and citations omitted).  Here, the
crux of plaintiff's allegations is a claim of selective
enforcement/prosecution and denial of equal protection under the
Fourteenth Amendment and Section 1981.  (Pl.'s Mem. at 13-14.)

## 1. Selective Enforcement Claim under Fourteenth Amendment

To establish an equal protection violation based on a
claim of selective enforcement, plaintiff must show "(1) that
[he was] treated differently from other similarly situated
individuals, and (2) that such differential treatment was based
on impermissible considerations such as race, religion, intent
to inhibit or punish the exercise of constitutional rights, or
malicious or bad faith intent to injure a person." *Harlen
Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir.
2001) (internal quotation marks and citation omitted).  The
elements of a selective prosecution claim are the same, except
plaintiff must prove under the first prong that others similarly

situated have not generally been prosecuted for the same type of
conduct, and that plaintiff was singled out for prosecution.
*United States v. White*, 972 F.2d 16, 19-20 (2d Cir. 1992).  The
court will address plaintiff's selective enforcement and
prosecution claim as one.

Under the first prong, plaintiff must demonstrate that
he was treated differently from other similarly situated
individuals.  The courts in this circuit have applied somewhat
varied standards under the similarly situated prong.  *See, e.g.*,
*Gentile v. Nulty*, 769 F. Supp. 2d 573, 580 (S.D.N.Y. 2011)
(collecting cases); *Wood v. Town of East Hampton*, No. 08-CV-
4197, 2010 WL 3924847, at *19-20 (E.D.N.Y. Sept. 30, 2010).
Some courts have held that the similarly situated prong requires
plaintiff to prove that another person's circumstances are
"*prima facie* identical," *Gentile*, 769 F. Supp. 2d at 580, while
other courts apply a slightly lower standard requiring the
plaintiff to "present evidence comparing [himself] to
individuals that are similarly situated in all material
respects."  *Id.* (quoting *Vassallo v. Lando*, 591 F. Supp. 2d 172,
184 (E.D.N.Y. 2008)).  Regardless of the meaning of "similarly
situated," if a plaintiff attempts to prove selective
enforcement or prosecution based on race, he must demonstrate
that "similarly situated individuals of a different race were
not [subjected to the offensive conduct]." *Vassallo*, 591 F.

28

Supp. 2d at 184 (quoting *Brown*, 221 F.3d at 337) (internal quotation marks omitted); *see also Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001) (holding that "a plaintiff alleging a claim of selective prosecution in violation of the Equal Protection Clause must plead and establish the existence of similarly situated individuals who were not prosecuted").

Here, plaintiff alleges that the defendant officers prosecuted him but did not prosecute Liriano, the white or Hispanic security guard. The court agrees with defendants that plaintiff fails to allege that he was similarly situated to Liriano or any other individuals. First, Liriano and plaintiff had different positions; Liriano was a security guard at the hospital, while plaintiff was a patient. Second, plaintiff fails to identify any similarly sitauted individuals who were allegedly treated differently by the police; that is, he fails to identify any non-black patients who were involved in an argument and physical altercation with a security guard, and who were not arrested or prosecuted. Consequently, plaintiff's selective enforcement and prosecution claim must fail under the "similarly situated" element.

Moreover, even if plaintiff could successfully show that similarly treated individuals of a different race were not arrested or prosecuted, plaintiff's claim fails under the second element of impermissible considerations. Under this

requirement, plaintiffs must prove that "the disparate treatment
was *caused by* the impermissible motivation.   They cannot merely
rest on a showing of disparate treatment." *Bizzarro v. Miranda*,
394 F.3d 82, 87 (2d Cir. 2005).   This is a "deliberately
'rigorous standard,'" *United States v. Alameh*, 341 F.3d 167, 173
(2d Cir. 2003) (quoting *United States v. Armstrong*, 517 U.S.
456, 468 (1996)), under which plaintiff must show that the
defendants arrested and prosecuted him "at least in part
'because of,' not merely 'in spite of,'" plaintiff's race.   *Id.*
(quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)).
Because plaintiff here has been unable to offer any evidence
that defendants acted with purposeful discrimination based on
his race, plaintiff's selective enforcement and prosecution
claim brought under the Fourteenth Amendment is dismissed.

### 2. Section 1981 Equal Protection Claim

Plaintiff also argues that the defendant officers'
decision to arrest and prosecute him violated 42 U.S.C. § 1981.
(Am. Compl. ¶ 45; Pl.'s Mem. at 15.)   Section 1981 provides in
relevant part that "[a]ll persons within the jurisdiction of the
United States shall have the same right in every State and
Territory to . . . the full and equal benefit of all laws and
proceedings for the security of persons and property as is
enjoyed by white citizens, and shall be subject to like
punishment."   42 U.S.C. § 1981(a).   Unlike claims brought under

Section 1983, a Section 1981 violation "is not based on an
underlying violation of a constitutional right, but rather
provides an alternative statutory remedy for violations that
concern an activity enumerated in the statute." *Olivera v. Town
of Woodbury*, 281 F. Supp. 2d 674, 684 (S.D.N.Y. 2003).

      To establish a claim under Section 1981, plaintiffs
"must allege facts supporting the following elements: (1)
plaintiffs are members of a racial minority; (2) defendants'
intent to discriminate on the basis of race; and (3)
discrimination concerning one of the statute's enumerated
activities." *Brown*, 221 F.3d at 339.

      Plaintiff here meets the first requirement.  However,
the second element, intent to discriminate, is essential to a
federal Section 1981 claim. *Wong v. Yoo*, 649 F. Supp. 2d 34, 69
(E.D.N.Y. 2009).  In assessing evidence of discriminatory
intent, the court should use an "expansive approach to the
record" because plaintiffs in such suits must often "rely on the
cumulative weight of circumstantial evidence, and a defendant is
unlikely to leave a smoking gun." *Id.* (citing *Norton v. Sam's
Club*, 145 F.3d 114, 119 (2d Cir. 1998)) (internal quotation
marks omitted).  At the same time, the defendants'
discrimination "must have been intentional and purposeful" and
the plaintiff must make a "'fact-specific allegation of a causal
link between defendant's conduct and the plaintiff's race.'"

31

*Carson v. Lewis*, 35 F. Supp. 2d 250, 269 (E.D.N.Y. 1999)

(quoting *Yusuf v. Vassar College*, 827 F. Supp. 952, 955

(S.D.N.Y. 1993)).

In this case, plaintiff has alleged that defendant officers arrested him and not Liriano because plaintiff is black and Liriano is white/Hispanic.  However, plaintiff fails to offer any facts showing that he was arrested *because* he is black.  *Compare Wong*, 649 F. Supp. 2d at 69 (holding that defendant was not entitled to summary judgment because of issue of fact as to whether he used racial epithets against plaintiff).  Indeed, even hostile acts of violence, without more, are insufficient to establish intentional discrimination. *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 102 (2d Cir. 2001) ("Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it.")  Accordingly, plaintiff's racial discrimination claim under Section 1981, like his equal protection claim, is dismissed.

### F. First Amendment Retaliation Claim

Plaintiff alleges that he was arrested "because he told the officers that he wanted the White male [security guard Liriano] arrested and repeated that [request] after he was told that he would be arrested."  (Am. Compl. ¶ 27.)  Plaintiff

32

claims that his arrest violated his right to freedom of speech
and expression as protected by the First Amendment. (*Id.* ¶ 35.)
Though defendants contend that plaintiff was arrested based on
Liriano's alleged injuries and complaint to Officer Petronella,
and not because plaintiff exercised his First Amendment rights,
(Defs.' Mem. at 13), there is a genuine issue of material fact
regarding the issue of probable cause, and specifically, whether
Liriano was injured or even spoke with Officer Petronella.  Upon
resolving all factual disputes in plaintiff's favor, the court
finds that defendants have not met their burden of establishing
that no genuine issue of material fact exists regarding
plaintiff's First Amendment retaliation claim.  Therefore,
defendants' summary judgment motion seeking dismissal of
plaintiff's First Amendment retaliation claims is denied.

        To prevail on a First Amendment retaliation claim,
plaintiff must prove "(1) he has an interest protected by the
First Amendment; (2) defendants' actions were motivated or
substantially caused by his exercise of that right; and (3)
defendants' actions effectively chilled the exercise of his
First Amendment right." *Curley v. Village of Suffern*, 268 F.3d
65, 73 (2d Cir. 2001); *see also Connell v. Signoracci*, 153 F.3d
74, 79 (2d Cir. 1998).

        Plaintiff has satisfied the first element of his First
Amendment retaliation claim.  Plaintiff contends that he was

arrested for telling the officers to arrest Liriano.  (Anderson
Aff. ¶ 20; Am. Compl. ¶¶ 17-19.)  Plaintiff's speech in this
instance was protected by the First Amendment.  It is "well
established that 'the First Amendment protects a significant
amount of verbal criticism and challenge directed at police
officers.'"  *Webster v. New York*, 333 F. Supp. 2d 184, 201
(S.D.N.Y. 2004) (citing *Houston v. Hill*, 482 U.S. 451, 461
(1987)).  Even "provocative speech directed at police officers
is protected against censorship or punishment, unless shown
likely to produce a clear and present danger of a serious
substantive evil that rises far above public inconvenience,
annoyance, or unrest."  *Posr*, 180 F.3d at 415 (internal
citations and quotation marks omitted).  Thus, as verbal
critiques towards police officers are protected speech under the
First Amendment, plaintiff's words to Officers Petronella and
Larkin asking them to arrest Liriano are also protected.

        Under the second element of intent, "[s]pecific proof
of improper motivation is required in order for plaintiff to
survive summary judgment on a First Amendment retaliation
claim."  *Curley*, 268 F.3d at 73 (citing *Blue v. Koren*, 72 F.3d
1075, 1082-83 (2d Cir. 1995)).  Evidence of improper motive "may
include expressions by the officials regarding their state of
mind, circumstances suggesting in a substantial fashion that the
plaintiff has been singled out, or the highly unusual nature of

34

the actions taken." *Blue*, 72 F.3d at 1084.  If the officer had probable cause or arguable probable cause to arrest the plaintiff, "then we will not examine the officer's underlying motive." *Singer*, 63 F.3d at 120; *see also Mozzochi v. Borden*, 959 F.2d 1174, 1179-80 (2d Cir. 1992).  In contrast, if a genuine issue of material fact exists on whether there was probable cause for the arrest, granting summary judgment on a First Amendment claim may be inappropriate. *Musso v. Hourigan*, 836 F.2d 736, 743-44 (2d Cir. 1988).  Here, construing the facts in the light most favorable to plaintiff, it is unclear whether probable cause existed for plaintiff's arrest or whether, as alleged by plaintiff, the officers arrested him with improper motives.  Accordingly, a genuine issue of material fact precludes summary judgment on the element of intent.

Further, under the third element of his First Amendment cause of action, plaintiff "must show . . . that his First Amendment rights were 'actually chilled.'" *Curley*, 268 F.3d at 73 (citing *Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 464 (2d Cir. 1978)).  Allegations of a "subjective" chill are insufficient; plaintiffs must show "specific present objective harm or a threat of a specific future harm." *Id.* (internal quotation marks and citation omitted) (finding no chilling effect where, after his arrest, plaintiff continued to run political campaign).  If a plaintiff cannot show any change

35

in his behavior, "he has quite plainly shown no chilling of his First Amendment right to free speech." *Id.; see also Singer*, 63 F.3d at 120 (dismissing First Amendment claim where plaintiff continued to publish his newspaper and failed to allege with sufficient particularity any actual chilling of speech). Bare, conclusory assertions of a chilling effect are insufficient to satisfy the third element. *Spear v. West Hartford*, 954 F.2d 63, 67 (2d Cir. 1992).

In cases where a private citizen alleges that he was subjected to official retaliatory prosecution, rather than First Amendment retaliation generally, "the viability of the [chilling] requirement is unclear." *Genia*, 2007 WL 869594, at *24. Specifically, in cases where the plaintiff is subjected to criminal prosecution, the Second Circuit and district courts have occasionally held that "if a plaintiff demonstrates a lack of probable cause, there is no separate chilling requirement." *Bartels v. Inc. Vill. of Lloyd*, 751 F. Supp. 2d 387, 397 (quoting *Genia*, 2007 WL 869594, at *23); *see, e.g., Bradley v. City of New York*, No. 04 Civ. 8411, 2007 WL 232945, at *8 (S.D.N.Y. Jan. 26, 2007) ("Plaintiff [alleging retaliatory prosecution] must demonstrate that the prosecution was not supported by probable cause, but need not show a chilling effect") (internal citations omitted); *Posr*, 180 F.3d at 418 ("To state a § 1983 claim for retaliation for the exercise of

36

First Amendment rights, a plaintiff must show that his activity was protected by the First Amendment and that the defendant's conduct complained of was in response to that protected activity."); *Holley v. County of Orange*, 625 F. Supp. 2d 131, 140 (S.D.N.Y. 2009) (same).  Under this line of cases, "where defendants have not established probable cause for the arrest, plaintiffs need not establish that their free speech rights were 'actually chilled' by defendants' actions" in order to survive summary judgment.  *Genia*, 2007 WL 869594, at *23.

In contrast, other opinions have held that plaintiffs must show a chilling effect, regardless of criminal prosecution. *E.g.*, *Curley*, 268 F.3d 65, 73 ("Where a party can show no change in behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."); *Kerman*, 261 F.3d at 242 (holding that plaintiff's arrest met the chilling requirement).

In this case, there is a material issue of fact as to whether plaintiff's First Amendment rights were chilled. Plaintiff states in his affidavit that as a result of his arrest, he "became afraid of . . . speaking to police officers and questioning their decision making, or asking them to do something. . . ."  (Anderson Aff. ¶ 23.)  A jury could find that plaintiff's arrest and confinement were sufficient to constitute actual chilling of his First Amendment right to speak out against police officers.  *E.g.*, *Kerman*, 261 F.3d at 242 ("[A]n

involuntary overnight trip to Bellevue has an obvious chilling effect."); *Lederman v. Adams*, 45 F. Supp. 2d 259, 269 (S.D.N.Y. 1999) (defendant officer's actions "had an immediate and specific chilling effect on plaintiff in that upon arrest he was unable to continue his demonstration and his First Amendment activities were cut short"). Accordingly, defendants' motion for summary judgment on the First Amendment claim is denied.

**III. Plaintiff's Claims Against City**

Plaintiff alleges that defendant City of New York is liable for false arrest, malicious prosecution, and discrimination under a common law theory of *respondeat superior*. (Am. Compl. ¶ 54.) Defendants contend on their motion for summary judgment that (1) plaintiff fails to state a claim against the City under Section 1983, and (2) plaintiff is time barred from his state law malicious prosecution claim against the City.

**A. Section 1983 Municipal Liability**

It is not clear to the court that plaintiff has actually alleged a cause of action against defendant City pursuant to Section 1983 under a theory of municipal liability. (*See* Am. Compl. ¶ 54.) However, to the extent that plaintiff has done so, these claims are dismissed. To sustain a claim against a local government under Section 1983, plaintiff must establish defendant City's liability as set out in *Monell v.*

38

*Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Monell* ensures that a "local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. Rather, it is only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Thus, plaintiff must allege facts showing that the City's policy, custom, or practice caused the alleged injury. *Id.* at 690-91; *Vives v. City of New York*, 524 F.3d 346, 357-58 (2d Cir. 2008). Here, plaintiff has failed present, much less allege, any facts to create a triable issue regarding the City's liability under Section 1983. Accordingly, to the extent plaintiff has alleged any claims pursuant to Section 1983 against defendant City, these claims are dismissed.

### B. Common Law Liability Under *Respondeat Superior*

Plaintiff argues that the City is responsible for the common law torts of false arrest and malicious prosecution, as well as for the alleged Section 1981 equal protection violation, under a theory of *respondeat superior*. (Pl.'s Mem. at 20.) Because the court has dismissed plaintiff's Section 1981 equal protection claim against defendant officers, it also dismisses the *respondeat superior* claim against the City. However, under the common law, "unlike § 1983, a municipality may be held liable for common law false arrest and malicious prosecution on

39

a theory of *respondeat superior*." *Chimurenga v. City of New York*, 45 F. Supp. 2d 337, 344 (S.D.N.Y. 1999) (dismissing plaintiff's Section 1983 claim against City but allowing common law claim alleging *respondeat superior* to survive summary judgment). If the plaintiff is able to "establish any of [his] pendent state law claims, [he] can recover against the City of New York under the common law doctrine of *respondeat superior*." *Clarke v. City of New York*, Nos. CV-96-5762, CV-98-7297, 1999 WL 608857, at \*14 (E.D.N.Y. July 22, 1999).      Therefore, to the extent plaintiff seeks to impose liability on the City under a common law theory of *respondeat superior* for his false arrest claim, he is allowed to proceed.

### C. Common Law Malicious Prosecution Claim

Plaintiff's allegation of malicious prosecution against the City under the common law, however, is time-barred and dismissed. Defendants argue, and the court agrees, that because plaintiff filed his notice of claim with the City without alleging malicious prosecution while the criminal charges were pending and never amended his claim or filed a separate claim for malicious prosecution, plaintiff is now time-barred from bringing a common law claim of malicious prosecution against the City on a theory of *respondeat superior*. In New York, a plaintiff asserting state law tort claims against a municipal defendant must file a notice of claim as a statutory

precedent to suit.  *See Shakur v. McGrath*, 517 F.2d 983, 985 (2d Cir. 1975).  This procedural requirement also applies to state law claims brought in federal court.  *See Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).  For malicious prosecution claims, the cause of action does not accrue until the criminal charges are terminated in plaintiff's favor.  *Morgan v. Nassau Cty.*, No. 03-CV-5109, 2009 WL 2882823, at *15 (E.D.N.Y. Sept. 2, 2009) (citing *Peresluha v. City of New York*, 400 N.Y.S.2d 818, 820 (N.Y. App. Div. 1977)).  The plaintiff must then file notice of claim "within ninety days after the claim arises."  N.Y. Gen. Mun. Law § 50-e(1)(a).

Here, plaintiff's criminal charges were dismissed on June 22, 2007.  (Certificate of Disposition.)  Plaintiff filed his notice of claim regarding his other state law claims on November 26, 2005 (Notice of Claim), before the malicious prosecution claim properly arose, and never filed a proper notice of claim for malicious prosecution.  Accordingly, given the failure to file a timely notice of claim for malicious prosecution, the court agrees with defendants that plaintiff's state law claim against defendant City alleging malicious prosecution must be dismissed.  *See Morgan*, 2009 WL 2882823, at *15 (holding same).

**IV. Section 1985 Claim**

Although plaintiff mentions 42 U.S.C. § 1985 at the beginning of his amended complaint, (Am. Compl. ¶ 1), he does not bring any causes of action pursuant to the statute.  Nor does plaintiff allege any of the elements of a claim under Section 1985 for damages arising from a conspiracy to violate civil rights.  42 U.S.C. § 1985(3).  Thus, plaintiff's Section 1985 claim, to the extent he alleges one, is dismissed.

**CONCLUSION**

For the foregoing reasons, the court denies in part and grants in part defendants' motion for summary judgment.  In particular, defendant's motion is denied as to plaintiff's claims alleging:  (1) false arrest, as against individual defendants under 42 U.S.C. § 1983 and as against defendant City under a common law theory of *respondeat superior*; (2) malicious prosecution, as against individual defendants under 42 U.S.C. § 1983; and (3) First Amendment retaliation, as against individual defendants.  Defendants' motion for summary judgment is granted as to plaintiff's claims alleging: (1) malicious prosecution, as against defendant City under a common law theory of *respondeat superior*; (2) illegal strip search, as against individual defendants under 42 U.S.C. § 1983 and defendant City under a common law theory of *respondeat superior*; (3) equal protection violations as against individual defendants under 42 U.S.C. § 1981; (4) discrimination as against defendant City under a

42

common law theory of *respondeat superior*; and (5) any claims

brought pursuant to 42 U.S.C. § 1985.

**SO ORDERED.**

Dated:      September 20, 2011
            Brooklyn, New York

                                    _____/s/_____
                                    **Kiyo A. Matsumoto**
                                    United States District Court
                                    Eastern District of New York